FLIGHT ENGINEERS' INTERNATION-
AL ASSOCIATION, EAL CHAPTER,
AFL–CIO, Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

Eastern Air Lines, Inc., Intervenor.

No. 18096.

United States Court of Appeals
District of Columbia Circuit.

Argued March 10, 1964.

Decided April 23, 1964.

Mr. I. J. Gromfine, Washington, D. C.,
with whom Messrs. Herman Sternstein
and William B. Peer, Washington, D. C.,
were on the brief, for petitioner.

Mr. O. D. Ozment, Associate Gen.
Counsel, Litigation and Legislation, Civil
Aeronautics Board, with whom Asst.
Atty. Gen., William H. Orrick, Jr.,
Messrs. John H. Wanner, Gen. Counsel,
Joseph B. Goldman, Deputy Gen. Counsel,
Peter B. Schwarzkopf, Attorney, Civil
Aeronautics Board, and Lionel Kesten-
baum, Atty. Dept. of Justice, were on the
brief, for respondent.

Mr. W. Glen Harlan, Atlanta, Ga., with
whom Mr. E. Smythe Gambrell, Atlanta,
Ga., was on the brief, for intervenor.

Before WILBUR K. MILLER, FAHY and
DANAHER, Circuit Judges.

FAHY, Circuit Judge.

This case is part of a long dispute be-
tween petitioner, Flight Engineers' In-
ternational Association, EAL Chapter,
(FEIA), and the Air Line Pilots Asso-
ciation (ALPA), over which of these un-
ions should represent flight engineers on
jet aircraft. Petitioner, at present the

certified bargaining agent for flight engineers on Eastern Air Lines, filed a complaint with the Civil Aeronautics Board alleging that Eastern had violated Section 401(k) (4) of the Federal Aviation Act, which provides that "It shall be a condition upon the holding of a certificate by any air carrier that such carrier shall comply with [Part II of the Railway Labor Act]." 72 Stat. 757, 49 U.S.C. § 1371(k) (4) (1958). The six violations specifically alleged were that Eastern had violated the Railway Labor Act by:

(1) making changes in the terms and conditions of employment of flight engineers without filing any notice of intended change as required by the Act;

(2) bargaining with individual engineers;

(3) negotiating with another union (ALPA) on matters as to which Eastern was obliged to bargain only with FEIA;

(4) failing to bargain in good faith with FEIA, with the intent of eliminating it as the certified bargaining agent of the flight engineers;

(5) discriminatorily conditioning the return to work of the striking flight engineers upon their relinquishment of the right to exercise seniority on jet equipment, and discriminatorily discharging and refusing to employ any striking flight engineers even though they had not yet been and could not legally be replaced by pilots represented by ALPA;

(6) refusing to process or submit to a Board of Adjustment certain grievances filed by FEIA and the individual engineers.

The Director of the Board's Bureau of Enforcement was of opinion that the complaint contained "reasonable grounds to believe that the provisions of Section 401(k) of the Act have been and are being violated by Eastern and that formal investigation of such alleged violations by the Board is in the public interest." He docketed the complaint for hearing by filing a petition for enforcement. In doing so, however, he pointed out that FEIA had previously filed two actions in the Southern District of New York seeking to enjoin "substantially the same violations of the Railway Labor Act as are alleged in the complaint before the Board" and that in both actions the court had denied the union's requests for interlocutory relief.[1]

Eastern filed with the Board a motion to dismiss the complaint, which the Board granted on the ground that the complaint "does not state facts which warrant investigation or action by the Board at this time, and that a hearing on the complaint would not now be in the public interest." The principal reason given was that the facts created a substantial doubt as to whether FEIA would continue as the certified bargaining agent for the flight engineers, with the result that the Board would not have power to direct the carrier to commence good faith bargaining with a particular union until the representation dispute has been decided by the National Mediation Board. The Board felt that the public interest would not be served by holding a lengthy hearing "solely to provide a forum for the adjustment of private grievances, particularly where an adequate remedy is available in the

1. The first of these decisions was by Judge Feinberg, D.C., 208 F.Supp. 182, aff'd per curiam, 307 F.2d 510 (2d Cir. 1962), cert. denied, 372 U.S. 945, 83 S.Ct. 934, 9 L.Ed.2d 970 (1963); the second by Judge Levet, 45 C.C.H. Labor Cases 27,-467, aff'd on different grounds, 311 F.2d 745 (2d Cir.), cert. denied, 373 U.S. 924, 83 S.Ct. 1523, 10 L.Ed.2d 423 (1963). The Court of Appeals' affirmance of Judge Levet's decision was on the ground that in that action the union essentially was seeking to force Eastern to bargain with FEIA rather than ALPA as to the terms and conditions of employment of Eastern's pilot-engineers when a substantial representation dispute existed and that under the Railway Labor Act the courts lacked jurisdiction in such cases.

**314**

courts, and where, as here, there has been resort to the courts to the extent previously indicated."

In petitioning to have the Board's dismissal order set aside FEIA first argues that where the complaint sets forth reasonable grounds for believing that the act has been violated, the Board lacks discretion to dismiss it without a hearing. FEIA points out that the Civil Aeronautics Act, the predecessor of the Federal Aviation Act, was modeled upon the Interstate Commerce Act, under Section 13 of which the ICC is required to hold a hearing upon the filing of a complaint that is not satisfied by the carrier complained against.[2]

The applicable provision is Section 1002(a) of the Federal Aviation Act, which provides in part:

"Any person may file with the Administrator or the Board, as to matters within their respective jurisdictions, a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provisions of this Act, or of any requirement established pursuant thereto. If the person complained against shall not satisfy the complaint and there shall appear to be any reasonable ground for investigating the complaint, it shall be the duty of the Administrator or the Board to investigate the matters complained of. Whenever the Administrator or the Board is of the opinion that any complaint does not state facts which warrant an investigation or action, such complaint may be dismissed without hearing."

72 Stat. 788, 49 U.S.C. § 1482(a) (1958).

The Board contends that the third sentence of this section gives it the necessary discretion. It relies upon Nebraska Dep't of Aeronautics v. C.A.B., 298 F.2d 286, 295 (8th Cir. 1962). In that case Nebraska filed a petition with the Board for an investigation into an alleged inadequacy of service by an airline. The Board dismissed the complaint without a hearing and the court affirmed, stating,

"The Interstate Commerce Act section, however, does not contain a provision comparable to the third sentence of § 1002(a). We regard this as a vital distinction. The section must, of course, be construed as a whole. In so doing we conclude that its third sentence (the last one quoted above) has significance and that it and the second sentence, taken together, vest in the Administrator or the Board, as the case may be, discretionary powers of investigation in response to a filed complaint. See Davis, Administrative Law Treatise, 1958, Vol. 1, § 4.07, pp. 259–60; Jaffe, The Individual Right to Initiate Administrative Process, 1940, 25 Ia.Law Rev. 485, 520–1; Pan American-Grace Airways v. Civil Aeronautics Board [85 U.S.App.D.C. 297], D.C.Cir., 1949, 178 F.2d 34, 36."

298 F.2d at 295.

Petitioner would distinguish the *Nebraska* case on the ground that there the Board in effect dismissed the complaint because it failed to set forth reasonable grounds for believing that the Act had been or was being violated. Petitioner presumably would similarly distinguish the *Pan American-Grace Airways* case cited in *Nebraska*.

■ We think the Board does have a discretionary power to dismiss a complaint which states reasonable grounds for believing that the Act has been or is being violated when it reasonably concludes that it would be in the public interest to do so, although this discretion is subject to review. There is some basis for petitioner's suggested distinction, but we think it ignores the fact that if the Board has a discretion to dismiss a complaint when it feels a hearing would not be in the public interest, this discretion to be meaningful must contemplate dismissals for reasons other

2. See I. C. C. v. Baird, 194 U.S. 25, 39, 24 S.Ct. 563, 48 L.Ed. 860 (1904).

than the failure of the complaint to allege facts constituting a violation of the Act.[3] A reading of the Federal Aviation Act and Part II of the Railway Labor Act, 45 U.S.C. §§ 181–188, which applies to air carriers, indicates that the Board is not expected to act as a general labor board for the airline industry in all cases where a carrier has violated the Railway Labor Act. Yet if the Board is denied discretionary power to dismiss a complaint alleging facts constituting such a violation that is the role it would be obliged to assume. The burden thus imposed would greatly hinder the Board in making available its resources quickly to solve those labor controversies into which it should enter to protect the public interest in undisrupted air transportation.

Further support for the Board's position is found in Section 401(g) of the Act, which seems to give the Board discretion whether ultimately to take affirmative enforcement action against Eastern in the form of a suspension of its license should it be shown to be guilty of the violations alleged by FEIA; for if the Board feels at the time a complaint is docketed for hearing that no such enforcement action would be warranted in the circumstances, then the Board should not be required in all cases to proceed to a prolonged hearing.

 Petitioner also claims that the Board by its Rules has delegated to the Director of its Bureau of Enforcement the final authority to determine whether a complaint should proceed to a hearing and that it is bound by his determination. In support petitioner cites Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). The answer, we think, is that the Board has not delegated such final authority to the Director. The Board's Rules make it clear that a motion to dismiss a complaint which has been docketed for hearing by

the filing of a petition for enforcement is in order. Thus Section 304.204(d) of the Rules provides that, "Motions to dismiss a third party complaint (one filed by any person other than an enforcement attorney) shall not be fileable prior to the docketing of a petition for enforcement." 14 C.F.R. 304.204(d). Section 2.1 of the Board's Statement of Organization and Delegations of Final Authority states that "the Board retains a discretionary right to review any action taken under delegated authority upon its own initiative or upon petition of a party or an intervenor in such action." 26 Fed.Reg. 7231, 7233 (1961). Authority in the Board to determine whether the public interest warranted a hearing was recognized by the Director in docketing the complaint. He stated: "[T]his petition for enforcement is docketed * * * so that the Board may determine whether it should exercise jurisdiction in the matter * * *."

The final contention of petitioner is that assuming discretion in the Board, it was here abused. As we have said, a principal reason given by the Board was the doubt it entertained that FEIA would continue as the bargaining agent for Eastern's flight engineers, thus raising a substantial representation question which should be decided not by it but by the National Mediation Board. The Board had reasonable grounds for its doubt. A special Commission and a Presidential Emergency Board, created to investigate the matter, had recommended that the pilots and engineers be brought under one union, the National Mediation Board has found that the pilots and engineers of United Airlines constituted a single craft to be represented by a single union, and many of Eastern's flight engineers had been permanently replaced while on strike. The legality of these replacements has not been finally determined, but has been in part decided adversely to FEIA by Judge

---

3. Professor Davis in his treatise, cited by the *Nebraska* court, states that the jurisdiction of the ICC is mandatory and then adds without qualification that "in other instances the administrative jurisdiction is discretionary, as in the Civil Aeronautics Act."

Feinberg in denying its motion for an interlocutory injunction.[4]

The doubt was recognized by the Second Circuit when, in affirming Judge Levet's denial of petitioner's second motion for an interlocutory injunction, it based its decision upon the ground that it could not force Eastern to bargain with petitioner when there was a "dispute as to representation." See Flight Engineers' International Ass'n v. Eastern Air Lines, 311 F.2d at 747. Moreover, the National Mediation Board has accepted from ALPA a petition calling for an investigation and determination of the proper bargaining representative.

Given a substantial doubt as to FEIA's future status, however, the question remains whether this justifies dismissal of the complaint. The Board felt that it did because it thought this doubt precluded it from effectively ordering Eastern to commence good faith bargaining with FEIA as lawful representative of the flight engineers. In this regard the first four violations alleged by FEIA deal directly or indirectly with Eastern's alleged failure to carry out its statutory duty to bargain with FEIA as the sole representative of the flight engineers, and any meaningful order remedying these violations, if they were such, would be designed to compel Eastern to fulfill this obligation in the future. Thus, insofar as the first four allegations of the complaint are concerned, the Board's first reason for dismissing the complaint appears sufficient; for it cannot be said the Board has abused its discretion in refusing indirectly to decide a representation dispute, a matter for the National Mediation Board. See Flight Engineers' International Ass'n, *supra*; Ruby v. American Airlines, Inc., 323 F.2d 248 (2d Cir. 1963), *cert. denied*, 376 U.S. 913, 84 S.Ct. 658, 11 L.Ed.2d 611 (1964).

Similarly, as to the first four allegations, the Board's second reason for dismissing the complaint, *i. e.*, substantially the same issues have been determined

adversely to the union by two district court judges on motions for interlocutory injunctions, supports its actions; for the facts and issues covered by the first four allegations are indeed substantially the same as those involved in the two court decisions. In both cases the court found that the union had no reasonable probability of success in a final hearing.

The last two allegations, however, do not relate to a possible breach of Eastern's duty to bargain with FEIA. They relate instead to the alleged right of individual engineers to reinstatement. (5th allegation) and to Eastern's duty under the Railway Labor Act to process or submit to a system board of adjustment alleged employee grievances (6th allegation). The issues involved in these two allegations were not passed upon in the actions in the Southern District of New York.

■ We recognize that the fifth allegation relates not only to the alleged right of individual engineers to reinstatement but also to the question of which union should be recognized as the bargaining agent for the Eastern flight engineers; for to the extent that FEIA members have been unlawfully denied reinstatement its claim to represent a majority of the flight engineers is weakened. However, to the extent that the replacement issue relates to the issue of representation it can and properly should be determined by the National Mediation Board in deciding which employees are entitled to vote in a representation election. See WES Chapter, Flight Engineers' International Ass'n, A.F.L.-C.I.O. v. National Mediation Board, 114 U.S.App.D.C. 229, 231–232, 314 F.2d 234, 236–237 (1962); Ruby v. American Airlines, Inc., *supra*. As to the matter of the individual grievances we agree that relief is available through the system boards of adjustment and in the courts. See International Ass'n of Machinists A.F.L.-C.I.O. v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d

4. See 208 F.Supp. at 193–194.

67, (1963).[5] Accordingly, we do not think it can be said that the Board has abused its discretion by refusing to order a hearing on the complaint at this time. The employees, under the Railway Labor Act, 45 U.S.C. § 184, can file a petition with the system board of adjustment. FEIA, in fact, has stated that it has already filed such a petition on behalf of the individual engineers. This considerably reduces the public interest in having the Board conduct a prolonged hearing on the matters at this time.

For the above reasons, after also considering other contentions not discussed, we conclude that the Board acted within the limits of its discretion under the Act.

Affirmed.

Mr. John A. Terry, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, WASHINGTON and WRIGHT, Circuit Judges.

5. Eastern alone contends that the Board has no independent jurisdiction at all to decide initially whether there has been a violation of the Railway Labor Act. The language of Section 401(k) (4), however, suggests the contrary and the legislative history, though sparse, also suggests that the Board has such jurisdiction. See

Hearings on H.R. 9738 Before the House Committee on Interstate and Foreign Commerce, 75th Cong., 3d Sess. 215 (1938); Hearings on S. 3659 Before a Subcommittee of the Senate Committee on Interstate Commerce, 75th Cong., 3d Sess. 64–65 (1938).