**Ed FRIEDRICH, a Division of Crutcher Resources Corporation, Plaintiff-Appellant,**

v.

**LOCAL NO. 780, IUE–AFL–CIO–CLC, et al., Defendants-Appellees.**

**No. 74–3194.**

United States Court of Appeals, Fifth Circuit.

June 30, 1975.

Terry S. Bickerton, San Antonio, Tex., for plaintiff-appellant.

David R. Richards, Austin, Tex., for Alfaro and Unions.

Luis M. Segura, San Antonio, Tex., for J. Wells.

Melvin Warshaw, Asst. Gen. Counsel, Washington, D. C., for defendants-appellees.

Before GODBOLD, Circuit Judge, SKELTON, Associate Judge,* and GEE, Circuit Judge.

SKELTON, Judge:

The sole question in this appeal is whether the appellant-employer is bound under the terms of its collective bargaining agreement to arbitrate its claims against the appellee-union for breach of the non-strike clause of the agreement. Ed Friedrich, a division of Crutcher Resources Corporation [hereinafter "Employer"] brought suit against the Local No. 780, IUE–AFL–CIO–CLC and the International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC [hereinafter "Union"] originally in a Texas state court claiming damages for a wildcat strike allegedly in violation of a no-strike agreement. After the case was removed to the Federal District Court for the Western District of Texas, San Antonio Division, the Union filed a Motion for Summary Judgment and/or Motion to Stay Proceedings, asserting that the Employer was obligated under the terms of the collective bargaining agreement to arbitrate such claims as were alleged in the suit. On, May 13, 1974, the trial judge granted the Union's Motion to Dismiss holding that " * * * the matter in dispute is susceptible of arbitration under the terms and provisions of the applicable collective bargaining agreement, and that the employer is entitled to invoke the arbitration machinery * * *." The Employer filed a timely appeal with this court.

For reasons specified below, we agree with the Employer and find that the collective bargaining agreement in controversy here does not contemplate nor provide for arbitration of Employer initiated grievances and therefore the judgment of the district court below must be reversed.

In determining whether the particular Employer grievance is arbitrable, it must first be recognized that there is a clear congressional policy favoring resolution of employer-employee disputes through arbitration. The Supreme Court has held: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). See also, Boeing Co. v. International Union, U.A.A. & A. Imp. Wkrs., 3 Cir. 1967, 370 F.2d 969; Firestone Tire & Rubber Co. v. International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America, 5 Cir. 1973, 476 F.2d 603. Notwithstanding this policy

* Of the U. S. Court of Claims, sitting by designation.

favoring arbitration, federal courts have long noted that whether or not a particular dispute is arbitrable is determined on the basis of the contract that exists between the parties. *See* Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Affiliated Food Distributors, Inc. v. Local Union No. 229, 3 Cir. 1973, 483 F.2d 418, cert. denied, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974); Firestone Tire & Rubber Co. v. International Union, *supra*; United Steelworkers, Local No. 1617 v. General Fireproofing Co., 6 Cir. 1972, 464 F.2d 726; Boeing Co. v. International Union, U.A.A. & A. Imp. Wkrs., *supra.*

This court expressed the contractual underpinnings of the determination of arbitrability as follows:

> The basis of arbitration is, however, contractual and unless the parties have provided for arbitration in the collective bargaining agreement, the court is powerless to compel arbitration. * * * [Firestone Tire & Rubber Co. v. International Union, etc., 476 F.2d at 605.]

Similarly, the Sixth Circuit Court of Appeals in *United Steelworkers, Local No. 1617, supra,* stated:

> * * * [A]rbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration. Under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, federal courts have the duty to determine if a party to a labor contract has breached its promise to arbitrate, although such a judicial inquiry is strictly confined to the question of whether or not the parties have agreed to arbitration. * * * It is not for the arbitrator to decide whether the dispute is arbitrable. [464 F.2d at 729.]

▮▮ In dealing specifically with the issue of arbitration of disputes arising as a result of breaches of a no-strike clause in a collective bargaining agreement, many cases have held that arbitration is not available where (1) grievance procedures of the agreement neither explicitly nor implicitly provide for such arbitration and (2) the contractual grievance machinery is wholly employee oriented. *See, e. g.,* Atkinson v. Sinclair Refining Co., *supra*; Firestone Tire & Rubber Co. v. International Union, *supra*; G. T. Schjeldahl Co., Packaging Machinery Div. v. Local Lodge 1680, IAM, 1 Cir. 1968, 393 F.2d 502; Boeing Co. v. International Union, *supra.* The determination of arbitrability in the instant case, therefore, requires a review of the provisions of the collective bargaining agreement to see if its grievance procedures are solely employee oriented.

▮▮ Article VII defines in very broad terms the types of disputes which constitute a grievance to be resolved under the collective bargaining agreement:

### ARTICLE VII

#### Grievance Procedure

*Section* 1. Any difference or disagreement between the Company and any employee or group of employees, involving the meaning or the application of the provisions of this Agreement, shall constitute a complaint or a grievance as the case may be and shall be taken up in the manner hereinafter set forth, within five (5) working days from knowledge of the incident by the agrieved, or it cannot be processed.
* * *

Under well established rules of contract interpretation, a contractual clause must be read in its context, and "a subsequent specification impliedly limits the meaning of a preceding generalization." G. T. Schjeldahl Co. v. Local Lodge 1680, IAM, *supra* at 504. Thus, the expansive definition of a grievance to be processed under this contract, which, arguably on the basis of Section 1, may include both employer disputes as well as employee initiated disputes, must be viewed in the light of the mandatory grievance proce-

dure to which it refers. After defining a grievance under the contract, Section 1 immediately sets out the steps that must be followed in resolving all disputes:

Step 1. Any employee having a complaint or grievance, or one (1) designated member of a group having a complaint or grievance *shall take it up orally with his Foreman.* If the employee desires the presence of the Steward, then the employee shall request from his Foreman that the Steward be present for discussion of the complaint or grievance. A steward shall be allowed to leave his work place for such purposes after requesting permission from his Foreman.

Step 2. In the event the complaint is not settled by the Foreman's oral answer, *the Steward shall reduce the grievance to writing* on the grievance form provided for that purpose and give it to the Foreman. The employee and the Steward shall sign the grievance record form. The Foreman shall give his decision in writing as soon as possible, but in any event within two (2) working days, and sign the grievance form in the place provided.

Step 3. In the event a satisfactory adjustment is not made in Step 2, and further appeal is desired, *the case must be presented by the Chief Steward to the Manager of the area involved* within five (5) working days after the grievance was presented in written form in Step 2; otherwise such case will be considered to have been settled. The Company will have 48 hours to render a written answer.

Step 4. In the event a satisfactory adjustment is not made in Step 3, and further appeal is desired, the case *must be presented by the Chief Steward to the Supervisor of Employee Relations,* within five (5) working days after the grievance was presented in written form in Step 3; otherwise such case will be considered to have been settled. The Company will have 48 hours to render a written answer.

Step 5. In the event a satisfactory adjustment is not made at Step 4, and further appeal is desired, the notification *must be presented by the Chief Steward to the Director, Industrial Relations* within five (5) working days after grievance answer was received at Step 4; otherwise, such case will be considered to have been settled.

If the case is properly appealed, it shall be discussed at the next monthly grievance meeting. A grievance meeting will be conducted the first Tuesday of each month, or re-scheduled for the following Tuesday or another date. The Union shall designate 3 or 4 of its members to act as a grievance committee. The Company Committee will be appointed by Management.

A written answer will be given within five (5) working days after the holding of a Step (5) meeting. If there is no appeal to arbitration in writing within five (5) working days from the Fifth Step answer, the case will be considered to have been settled.

Step 6. If a satisfactory settlement has not been reached in Step 5, *the Union Grievance Committee may,* within five (5) working days after receiving the decision of the Company Committee, present to the Director of Industrial Relations a written request for arbitration. [Emphasis supplied.]

As is apparent from the emphasized portions of the grievance procedures, its machinery is clearly oriented exclusively toward employee initiated disputes and accordingly the broad generalized definition for grievance given in Section 1 of Article VII must be so limited. In each of the enumerated six mandatory steps the employee or his union representative, rather than the Employer, actuates the grievance resolving mechanism, and, therefore, to be compatible with this orientation, the disputes brought up under the grievance procedures must be those which the employees have and not those initiated by the Employer. It would be a very strained interpretation of the grievance procedure to permit the Employer to resolve his disputes through the six step grievance machinery since it

would require the union at each stage to present the Employer's grievance to the Employer for resolution. Such an absurd result is avoided by recognizing that the grievance procedure of this particular collective bargaining agreement was drafted by the parties with only employee grievances in mind. Such Employer disputes as a claim for damages for breach of the no-strike clause was not intended to be resolved through these procedures and to do so would result in highly illogical consequences.

Arbitration is provided for under Article VII of the collective bargaining agreement as follows:

## ARTICLE VIII
### Arbitration

Section 1. In the event that no satisfactory settlement of a grievance is reached after Step 6 of the grievance procedure as provided in Article VII, the dispute or grievance *may,* at the request of either party, be submitted to arbitration. * * * [Emphasis supplied.]

Although this provision permits either party to request arbitration, it limits it to disputes not resolved after Step 6 of the grievance procedures of Article VII. Thus, by requiring all arbitrable disputes to have passed through the employee-oriented steps of the mandatory grievance procedures, this agreement limits arbitration to employee initiated disputes. Employer claims, such as for breach of the no-strike clause, not being capable of resolution under Article VII would therefore fall outside of the arbitration clause of Article VIII, and would not be "susceptible of arbitration."

The conclusion that arbitration is limited to grievances amenable to being processed under the employee oriented Article VII grievance procedure is further supported by Section 2 of Article VIII which states that " * * * the issue presented to the Arbitrator shall be limited to the grievance as set out in writing at Step 4 of Article VII of the procedure." As reproduced above; Step 4 requires the union representative to present the disputes to the Supervisor of Employee Relations and therefore deals only with employee complaints and not those of the Employer. Since Employer's disputes cannot come within Step 4, Section 2 of Article VIII has meaning only if arbitrable issues are limited to employee grievances.

Affiliated Food Distributors, Inc. v. Local Union No. 229, *supra,* is a case closely analogous to the present case. There, as here, the question was whether a breach of a no-strike clause represents an arbitrable dispute under the labor-management contract. As in the instant case the contract broadly defined grievances as being "Any difference, grievance, or dispute between the Company and the Union arising out of, or relating to this Agreement * * *." [483 F.2d at 419.] This general definition, however, was limited by a grievance procedure similar to that of the instant case and found to be wholly employee oriented. Because arbitration was available only where the parties could not reach an agreement under the grievance machinery, the court held that the collective bargaining agreement did not intend to include Employer disputes within its arbitration authorization.

Similarly, in G. T. Schjeldahl Co. v. Local Lodge 1680, IAM, *supra* 393 F.2d at 504, the court noted that a grievance procedure which is employee oriented, limits the definition of "grievance" to disputes brought by the union or employees. The court found that the arbitration clause which stated: "Any grievance not settled in the grievance procedure may be submitted to arbitration by either party. * * *," incorporated the employee oriented definition of grievance and therefore limited arbitration to only those disputes that were brought by employees. Moreover, the fact that the arbitration clause permitted "either" party to demand arbitration did not help the union's position since the court noted that various reasons might exist for an Employer to request arbitration of an employee's dispute. "That only em-

ployee grievances should be arbitrated is not a result absurd on its face." [*Id.* at 505.]

The union urges that despite its clear language the grievance procedures here are not exclusively employee oriented and therefore an Employer dispute is arbitrable under the arbitration clause. They contend that any of the grievance steps which is incompatible with an Employer-initiated complaint is explicitly waivable under Section 4 of Article VII. This clause states: "All steps in the grievance procedure and the time limit specified herein may be waived, reduced or extended by mutual written consent of the parties." We need only point out that a waiver which requires "mutual" consent to correct an anomalous situation cannot possibly help the union. Should the Employer refuse to give its consent, any claims it might have with the union would have to be resolved through a ludicrous and unworkable procedure. We believe that this section was only a means for the parties to expedite disputes already amenable for resolution under the grievance procedures. In any event, there was no mutual written waiver by the parties here.

The unions also point to Section 5 of Article VII to show that the agreement contemplates disputes initiated by either party. It states: "Group grievances, grievances of a general nature, discharges or disciplinary layoffs, may be raised, initially by either party at Step 3 of the grievance procedure." Although this language seems to permit either party to raise a claim, it is significant that it refers back to Step 3 of the grievance machinery, a step which on its face like the five other steps can only involve union or employee disputes. This clause is therefore limited by the employee oriented grievance procedures to which it refers and does not open the particular collective bargaining agreement to resolution of disputes of Employer against the union.

█ In summary, we believe the collective bargaining agreement in question

in the instant case is exclusively oriented toward resolution of employee grievances only. For this reason, as in *Atkinson, supra,* we think it can be said with "positive assurance" that the arbitration clause of this agreement is not susceptible of a fair interpretation that the parties intended to arbitrate Employer grievances of the type involved here.

Accordingly, the order of the district court judge dismissing this action pending submission of the dispute to arbitration is reversed and the case is remanded to the district court for proceedings consistent with this opinion.

Reversed and remanded.