**WILLO PACKING CO., INC., Plaintiff,**

v.

**BUTCHERS, FOOD HANDLERS AND ALLIED WORKERS UNION OF GREATER NEW YORK AND NEW JERSEY, LOCAL 174, Defendant.**

**No. 77 Civil 1047.**

United States District Court,
S. D. New York.

May 5, 1978.

Orenstein, Snitow, Sutak & Pollack, P. C., New York City, for plaintiff; Franklin H. Snitow, New York City, of counsel.

Belson, Connolly & Belson, New York City, for defendant; John J. Connolly and Nicholas Santangelo, New York City, of counsel.

1. Jurisdiction is based on 29 U.S.C. § 185.

2. The Union has previously moved for similar relief which this Court denied without prejudice to renewal. At that time, the Union was unwilling to affirm the existence of the collective bargaining agreement under which it sought to compel arbitration in this action. Concurrent with the employer's suit in this Court, the parties have been engaged in the New York Supreme Court in arbitration demanded by the Union to determine the rights of the employees retained after the lockout/strike which is the basis for this breach of contract suit. The New York State arbitrator determined that a collective bargaining agreement did exist between the parties during the relevant time period, and the Union perforce now relies upon this determination in renewing its motion to compel arbitration.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff ("Employer") commenced this action against the defendant ("Union") to recover damages for breach of a "no-strike" provision contained in their collective bargaining agreement.[1] The Union moves[2] to stay this action and for a direction that the parties proceed to arbitration upon the ground that the issue presented under plaintiff's complaint in this action is referable to arbitration under the terms of their collective bargaining agreement. The Employer resists the motion and contends that the arbitral procedure is limited to employee grievance claims.

The law on the subject is clear. Whether or not arbitration is required is a matter of contract of the parties.[3] The issue is to be decided within the framework of their collective bargaining agreement. Arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[4] Whatever doubts exist as to whether the controversy is within the ambit of the arbitral process are to be resolved in favor of coverage.[5] The contract here in question is hardly a model of labor contract draftsmanship, but the issue must be decided upon what the parties themselves have wrought.

3. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Drake Bakeries Inc. v. Local 50, American Bakery & Confectionery Workers*, 370 U.S. 254, 256–57, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

4. *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

5. *Id.* at 583, 80 S.Ct. 1347. *See International Union of Electrical, Radio & Machine Workers v. Westinghouse Elec. Corp.*, 218 F.Supp. 82, 84 (S.D.N.Y.1963), *aff'd on opinion below*, 326 F.2d 758 (2d Cir. 1964).

The controversy had its origin when the Employer gave notice to the Union, pursuant to a provision of the collective bargaining agreement, of a contemplated layoff of a number of employees. The layoff was followed by what plaintiff alleges was a strike, which lasted from January 5 to January 16, 1976.

Only two provisions of the agreement touch upon the issue to be decided, Articles 34 and 36, which provide:

*Article 34 Grievances*

(a) All grievances arising between the employees and the employer shall be reported to the Union. The employer and the Shop Steward shall try to settle such grievances immediately in the plant. If no Shop Steward has been elected by the employees, or if the Shop Steward is unavailable, the grievance shall be referred directly to the Union. Should they not succeed in settling the dispute the employer and/or the Shop Steward shall notify the Union of the pending grievance. The Union shall immediately try to reach an adjustment within two (2) working days. If no settlement of the grievance has been reached within ten (10) working days thereafter, the matter shall be referred to the New York State Mediation Board for arbitration, no matter where the employer's plant is located.

(b) Any employee who shall be required to testify before hearings with regard to arbitration, mediation or the settlement of a dispute, and whose testimony is necessary and material, shall not suffer any loss in wages by reason thereof.

(c) Hearings, whenever possible, shall be held in the afternoon.

(d) Records of the employer, kept in the normal course of business, are to be made available to the Union, if necessary for the settlement of a grievance.

(e) No claim shall be made with respect to any grievance unless such claim shall be presented to the employer within ninety (90) days after the employee becomes aware of his rights to make a claim. Illness of the employee will 'toll' the ninety (90) day period.

\* \* \* \* \* \*

*Article 36 Real Party in Interest*

(a) It is mutually agreed that the Union is the real party in interest under the terms of this Agreement with respect to the proper enforcement of any of its provisions, and no individual member of the Union may take any action with reference to any subject matter covered by this Agreement without the consent of the Union. No member of the Union shall have the right to institute any legal proceedings in any court or before any administrative tribunal against an employer, on account of any matter directly or indirectly arising out of this Agreement or for the alleged breach thereof, without the written consent of the Union.

(b) No employer, who is a member of any Association signatory to this Agreement, shall have the right to institute any legal proceeding in any court, which might otherwise be maintained under the provisions of this Agreement against the Union or any member thereof on account of any matter directly or indirectly arising under this Agreement or for the alleged breach thereof, without the written consent of the Association of which the employer is a member. Anything to the contrary notwithstanding, nothing in this clause shall be construed as a modification of the provisions of this Agreement governing the submission of complaints, grievances and disputes to arbitration and the determination thereof.

The Employer asserts that these Articles demonstrate that the grievance procedure leading to arbitration is limited solely to employee grievances, and therefore that its claim for breach of contract is not arbitrable.[6] It would limit the grievance proce-

---

**6.** Where grievance procedures are deemed to apply only to employee grievances, courts have not compelled arbitration of employers' claims based on breaches of no-strike clauses. *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Friedrich*

dure under Article 34 to intra-plant disputes; in support of its position it points to the fact that only the employee is given a time limit for filing a grievance.[7]

However, the opening sentence of the Article is not restrictive; rather it is all inclusive. It provides "*all grievances* arising between the employees and the employer shall be reported to the Union." (Emphasis supplied.) "Grievance" itself is not defined. The Article is not made applicable to any specific subject matter as, for example, hours, working conditions, holidays, overtime, or layoffs.[8] The Article contains no language from which it may be clearly inferred that only employees may invoke the grievance procedure or demand arbitration.[9]

Moreover, Article 36, which prohibits the employer from instituting a legal proceeding without the consent of the employer association, further provides that such prohibition shall not be construed to modify any provision of the agreement "governing the submission of complaints, grievances and disputes to arbitration." This language clearly implies that "complaints" and "disputes"—as well as "grievances"—are subject to arbitration, although the collective bargaining agreement makes no other reference to these terms. The parties have offered no explanation for the inclusion of "complaints" and "disputes" which presumably must have some meaning;[10] the words may reasonably be construed to reflect an all embracing and comprehensive arbitration provision.

The parties engage in a dialectical discussion as to the reasons for the inclusion in Article 36 of the clause in question, the plaintiff contending that it excludes any action for breach of contract from the reach of arbitration. Thus plaintiff urges in its memorandum of law that "if the parties intended [the] last sentence [of Article 36] to apply to instances of breaches of contract, it would have expressly so stated." An obvious reply is that if the parties intended to *exclude* a no-strike violation from arbitration they would have expressly so stated.[11] The Union asserts that Article 36 means that approval by the employer association of the employer's suit does not obviate the submission of a dispute to arbitration.

■ No purpose would be served by a detailed consideration of the respective ar-

---

v. *Local 780, IUE*, 515 F.2d 225 (5th Cir. 1975); *G. T. Schjeldahl Co. v. Local Lodge 1680, IAM*, 393 F.2d 502 (1st Cir. 1968).

7. *Cf. ITT World Communications Inc. v. Communications Workers*, 422 F.2d 77, 81 (2d Cir. 1970).

8. *Cf. Lewittes & Sons v. United Furniture Workers*, 95 F.Supp. 851, 853 (S.D.N.Y.1951).

9. Thus this case is readily distinguishable from cases which have held the grievance procedure to be wholly employee oriented. *See, e. g., Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 243, 82 S.Ct. 1318, 1322, 8 L.Ed.2d 462 (1962) ("There is not a word in the grievance and arbitration article providing for the submission of grievances by the company. Instead, there is the express, flat limitation that arbitration boards should consider only employee grievances. Furthermore, the article expressly provides that arbitration may be invoked only at the option of the union."); *Friedrich v. Local 780, IUE*, 515 F.2d 225 (5th Cir. 1975) (Step 1 of grievance procedure states "any employee having a complaint or grievance" and makes no mention of employer grievances).

10. It hardly need be stated that a court should strive to give meaning to every provision in a contract. *See, e. g., Hanley v. James McHugh Constr. Co.*, 444 F.2d 1006, 1009 (7th Cir. 1971); *United States v. N. A. Degerstrom, Inc.*, 408 F.2d 1130, 1133–34 (9th Cir. 1969).

11. *See Drake Bakeries Inc. v. Local 50, American Bakery & Confectionery Workers*, 370 U.S. 254, 258–59, 82 S.Ct. 1346, 1349, 8 L.Ed.2d 474 (1962):

The company earnestly contends that the parties cannot have intended to arbitrate so fundamental a matter as a union strike in breach of contract, and that only an express inclusion of a damage claim by the employer would suffice to require arbitration. But it appears more reasonable to us to expect such a matter, if it is indeed so fundamental and so basic to the company under the contract, to have been excluded from the comprehensive language of [the grievance procedure] if the parties so intended.

To the same effect are *Blake Construction Co. v. Laborers' Int'l Union*, 167 U.S.App.D.C. 86, 90, 511 F.2d 324, 328 (1975); and *ITT World Communications Inc. v. Communications Workers*, 422 F.2d 77, 81–82 (2d Cir. 1970).

guments. They simply accentuate the lack of precision as to the sweep of the arbitration provision. What does evolve from the opposing arguments is that one cannot state with "positive assurance" that a breach of the no-strike provision was to be excluded from the arbitral process. In such circumstance, the doubt must be resolved in favor of arbitration.

Accordingly, the motion to stay this action is granted and the parties are directed to proceed to arbitrate the issue raised therein in accordance with the arbitration procedure of their collective bargaining agreement.